IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| WAYNE E. SPALDING and PATRICIA SPALDING, ) ) ) Plaintiffs, ) ) vs. ) ) BALLY TOTAL FITNESS CORPORATION, ) BALLY TOTAL FITNESS OF MISSOURI, INC.,) and CYBEX INTERNATIONAL, INC., ) ) Defendants. ) | Case No. 05-0441-CV-W-ODS |

ORDER AND OPINION DENYING BALLY TOTAL FITNESS CORPORATION'S
MOTION FOR SUMMARY JUDGMENT

Pending is a Motion for Summary Judgment filed by Defendant Bally Total Fitness Corporation ("Bally"). For the following reasons, the motion (Doc. # 16) is denied.

I. BACKGROUND

As its name suggests, Bally operates a fitness center. Plaintiff Wayne Spalding ("Spalding") alleges he injured himself while using a leg press at the fitness center and advances various theories of negligence on Bally's part. Approximately two months prior to injuring himself, Spalding executed an agreement with Bally's that established the particular membership plan Spalding selected, renewal terms, and a financing agreement for the payment of the membership fee. The entire document is on a piece of paper that is folded in half; when so folded, the document forms a "booklet" that is approximately 8½ by 11 inches. The two outer sides contain blanks to be filled in with the price, financing terms, type of membership, and the prospective member's name and financial

information. The interior two sides contain provisions divided into twenty-two different paragraphs.

The tenth paragraph provides as follows (with emphasis and capitalization in the original):

> **WAIVER AND RELEASE.** You . . . agree that if you engage in any physical exercise or activity or use any club facility on the premises, you do so at your own risk. This includes, without limitation, your use of the locker room, pool, whirlpool, sauna, steamroom, parking area, sidewalk or any equipment in the club facility and your participation in any activity, class, program or instruction. You agree that you are voluntarily participating in these activities and using these facilities and premises and assume all risk of injury, illness, damage or loss to you or your property that might result, including, without limitation, any loss or theft of any personal property. You agree on behalf of yourself . . . to release and discharge us . . . from any and all claims or causes of action (known or unknown) arising out of our negligence. This Waiver and Release of liability includes, without limitation, injuries which may occur as a result of (a) your use of any exercise equipment or facilities which may malfunction or break, (b) our improper maintenance of any exercise equipment or facilities, (c) our negligent instruction or supervision, and (d) you slipping and falling while in the facility or on the premises. **You acknowledge that you have carefully read this Waiver and Release and fully understand that it is a release of liability. You are waiving any right that you may have to bring a legal action to assert a claim against us for our negligence.**

There is no place for the customer to initial or otherwise indicate s/he has read paragraph 10. The paragraph appears in eight point type. For comparison purposes, the type used throughout this Order is twelve point type, while eight point type looks like this.

A series of notices appear above the signature line on one of the two outer pages. All of the notices are capitalized and in larger type than the rest of the document – all, that is, except for one. One of the notices reads as follows:

> WAIVER AND RELEASE. This Contract contains a **WAIVER AND RELEASE** in Paragraph 10 to which you will be bound.

Spalding was also provided with a membership card that was approximately the same size as a credit card. The front had Bally's name and logo, and the back had a magnetic strip, Spalding's picture, and a space for his signature. There was also text on the back of the card that the parties agree "was approximately the size of the smallest text on the back of a credit card" stating as follows:

> User of card or club acknowledges agreement to comply with current club rules and written membership contract, including but not limited to the waiver and release of liability from any and all claims or causes of action arising out of our negligence for personal injury or theft of property.

It is not clear from the record whether this is the only language appearing on the back of the membership card. Members were required to present their membership card each time they used the facility.

## I. DISCUSSION

### A. Standard

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied,

3

470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. The Release is Invalid

Bally's contends Spalding released all claims of future negligence. "Releases of future negligence are not void as against public policy, though they are disfavored and strictly construed. To release a party from its own future negligence, exculpatory language must be clear, unambiguous, unmistakable, and conspicuous." Warren v. Paragon Tech. Group, Inc., 950 S.W.2d 844, 845 (Mo. 1997) (en banc) (quotations omitted). "[O]ne may never exonerate oneself from future liability for intentional torts or for gross negligence, or for activities involving the public interest." Alack v. Vic Tanny Intern. of Missouri, Inc., 923 S.W.2d 330, 337 (Mo. 1996) (en banc). "The validity of a liability limitation is a question of law for the court." Purcell Tire & Rubber Co., Inc. v. Executive Beechcraft, Inc., 59 S.W.3d 505, 508 (Mo. 2001) (en banc).

A variety of factors combine to persuade the Court that the purported waiver is not "conspicuous." To make something conspicuous requires one to expend extra effort to highlight or point out the clause in question. Bally's arguments notwithstanding, the Court holds this was not done effectively.

While not dispositive, the type of document the consumer is entering is of some significance. Cf. Lewis v. Snow Creek, Inc., 6 S.W.3d 388, 394-95 (Mo. Ct. App. 1999). The outer pages of the document – the two that actually required Spalding to provide information – are entitled "RETAIL INSTALLMENT CONTRACT" and "AUTOMATIC PAYMENT PLAN." The format of the contract does not insure Spalding examined the interior two pages, much less insure that he actually read paragraph 10. Even if Spalding had opened the "booklet" it must be noted that paragraph 10 appears in the same size type as the other twenty-one paragraphs it accompanies. The final sentence

4

is in bold, but visual inspection reveals that this does little to highlight the critical language because the type is so small to begin with and the final sentence is immediately followed by the heading for paragraph 11, which is also in bold and serves to make the entire text an undifferentiated mass of verbiage.  A space for the customer to separately initial paragraph 10 might obviate the problem, but as it is nothing in the inner pages of the document calls paragraph 10 to the reader's attention.  Cf. Alack, 923 S.W.2d at 333 ("All seventeen of the paragraphs on the form-contract were printed with the same-sized lettering.  Nothing made Paragraph G, or any of the language contained therein, conspicuously stand out.  Alack signed the contract near the bottom of the first page.  Paragraph G was on the back side of the contract."); Sale v. Slitz, 998 S.W.2d 159, 165 (Mo. Ct. App. 1999) ("The exculpatory clause is on the reverse side of the contract and is located among fourteen other paragraphs.").

      Defendant points to the reference to paragraph 10 appearing immediately above the signature line on one of the two outer pages.  Curiously, the language referring to paragraph 10 appears in smaller type than the rest of the notices appearing around it.  Reducing the type cannot be characterized as an attempt to make it conspicuous.  "'[A] provision that would exempt its drafter from any liability occasioned by his fault should not compel resort to a magnifying glass and lexicon.'"  Lewis, 6 S.W.3d at 395 (Mo. Ct. App. 1999) (quoting Alack, 923 S.W.2d at 335).[1]  Thus, there is nothing in the contract that can fairly be described as making paragraph 10 conspicuous to the reader.

---

[1]Similarly, there can be no legal effect resulting from the language on the back of the membership because it is not conspicuous (assuming, in the first instance, that Spalding's signature on the back of the membership card *could* have any legal effect in any circumstance).

5

## C. The Remaining Arguments

Spalding and Bally's co-defendant (Cybex International, Inc. ("Cybex"), the leg press' manufacturer) have advanced other arguments opposing Bally's motion. The Court rejects these arguments.

### 1.

Spalding contends the release is invalidated by section 408.260(11) of the Revised Missouri Statutes. That section declares "[n]o retail time contract shall contain any provision by which the buyer agrees to relieve the seller, assignee or holder of any liabilities, or . . . to waive any claims, rights or legal remedies which the buyer may have against the seller, assignee or holder *under the retail time contract.*" (emphasis supplied). The parties' contract is a multi-function document that includes a retail time contract, but the release in question does not purport to waive or release any claims related to or arising from the retail time "aspect" of the contract. Therefore, the statute does not apply.

### 2.

Spalding contends the contract is not enforceable because it is an adhesion contract. "An adhesion contract is a form contract created by the stronger of the contracting parties. It is offered on a 'take this or nothing' basis. Consequently, the terms of the contract are imposed upon the weaker party who has no choice but to conform. These terms unexpectedly or unconscionably limit the obligations and liability of the drafting party." Robin v. Blue Cross Hosp. Service, Inc., 637 S.W.2d 695, 697 (Mo. 1982) (en banc) (citations omitted). Accepting that Bally's had greater bargaining power than Spalding, Spalding was not obligated to execute the contract because there are a

6

multitude of other fitness centers and exercise facilities.  Cf. id. ("[W]eaker parties are often unable to look elsewhere for more attractive contracts.  Such is not true in this case.  There are literally hundreds of [vendors] available to the consumer.").  Additionally, the nature of the goods or services in question is relevant; membership in a fitness center hardly qualifies as a necessity of life the importance of which is so great that one must have it regardless of the terms upon which it is offered.  The mere fact that Bally's did not (and likely would not have) negotiated or removed this term does not render it unenforceable.

### *3.*

Third, Spalding argues the entire contract – including the release – expired when the financing arrangement ended in January 1996.  The Court rejects this argument for two reasons.  First, this requires an unduly limited view of the parties' contract.  As noted earlier, this single document memorializes several aspects of the parties' agreement.  Part of it involves financing, which contemplated the final payment would be made within three years.  Other parts establish the type of membership and the renewal terms and have different time limitations.  To accept Spalding's argument would require concluding the membership as a whole ended in three years, but clearly this is not what the parties contemplated.  Second, Spalding's negligence claims arose long before the financing agreement concluded; crediting Spalding's argument would eviscerate the waiver by allowing a claim arising while the waiver was in effect to be asserted after the waiver "ended."

### *4.*

Spalding's final argument contends the release is ambiguous.  The Court disagrees.  An unambiguous waiver establishes that one party is releasing future claims for negligence and does not expand the waiver to purportedly release claims that cannot

7

be released under Missouri law. For instance, a waiver clause purporting to release "all claims" is ambiguous because the language is not limited to negligence and plainly describes claims that cannot be released (such as intentional torts). See Alack, 923 S.W.2d at 337-38. It is advisable to use words such as "negligence" or "fault" to clarify the precise nature of the claims being released. Lewis, 6. S.W.3d at 394 (citing Alack, 923 S.W.3d at 336); but see Purcell Tire & Rubber, 59 S.W.3d at 509 (holding specific words or phrases not required in contract between "sophisticated businesses" negotiating at arms length). Spalding's contention to the contrary, the language used in paragraph 10 is distinguishable from that found in Alack precisely because it is limited to claims of negligence.

Spalding also suggests an ambiguity exists in light of paragraph 9, which states as follows:

> RESERVATION OF RIGHTS. We reserve the right at any time to close any of our facilities or alter the hours of operation, and the right to amend the cost of, add, modify and/or eliminate any program, activity, class or service in our sole discretion. Except as prevented by act of God, war, strike and other causes beyond our control, and subject to our rights reserved in this paragraph, *we will*, during the term of Member's membership, *maintain the health club facilities and the supervision thereof substantially as of the date of this Contract.* Classes and equipment are available subject to demand and may be crowded at peak hours or may be discontinued or times changed if demand fluctuates.

Spalding theorizes that the italicized portion states an obligation on Bally's part that contradicts with paragraph 10's seeming elimination of that obligation. Assuming this interpretation of paragraph 9 is correct (a matter discussed in the ensuing section), crediting Spalding's argument would require invalidating all releases because all releases are a matter of contract and, out of necessity, will exist in circumstances in which the party being released is undertaking a contractual obligation of some sort. Regardless, as a conceptual matter there is no conflict between a party saying (1) I agree to

8

undertake this obligation but (2) you cannot sue me for performing the obligation negligently.

### 5.

Cybex also relies on paragraph 9, but for a different reason. Cybex contends Bally failed to maintain the equipment, thereby breaching the contract and rendering paragraph 10 unenforceable. The Court questions Cybex' standing to contend Bally breached a contract with Spalding when Cybex was not a party to that contract. Nonetheless, the Court rejects Cybex' argument. Read in context, the use of the word "maintain" in paragraph 9 mean "keep" or "continue," not "repair." In other words, paragraph 9 discusses Bally's rights and obligations to make certain equipment, classes, and facilities available for members' use, and does not impose an obligation to inspect or repair equipment. This duty may exist as a matter of tort law, and it may exist due to a provision of the contract not identified by the parties, but this duty is not created by paragraph 9.

### III. CONCLUSION

For these reasons, Bally's Motion for Summary Judgment is denied.

IT IS SO ORDERED.

                                                /s/ Ortrie D. Smith
                                                ORTRIE D. SMITH, JUDGE
DATE: September 1, 2005          UNITED STATES DISTRICT COURT